F. W. TEALEY v. J. W. HOYTE and others.

October Term, 1877.

GUARDIAN AND WARD — ELECTION OF WARD BETWEEN LAND AND MONEY. —
Where a guardian, in the collection of notes belonging to his wards, secured by lien on realty, becomes the purchaser of the realty at the judicial sale, taking title to himself as guardian, the wards may elect to take the land, or the money bid, and if the guardian resells at an advance, may ratify the sale, the court acting for the infant wards.

*Ruhm*, for complainant.
*Malone*, for wards.
*Smith*, for guardian.

THE CHANCELLOR : — The defendant Hoyte received, as the guardian of his co-defendants, the children of J. E. Gleaves, certain notes, secured by a lien on a house and lot in Nashville. As guardian, he filed a bill to enforce the lien, and such proceedings were had that a decree was rendered in his favor by the Supreme Court for the debt, and for a sale of the land in satisfaction thereof. The land was bought by a third person, who failed to pay the purchase-money as it fell due. Thereupon the land was ordered by the Supreme Court to be sold for cash, to meet the balance due and unpaid. Under this order, the clerk of that court, on February 12, 1876, offered the land for sale, when the same was bid off by defendant Hoyte, at the price of $3,549.78, being the balance of debt due to him as guardian, with interest and costs. The clerk reported the sale made to " J. W. Hoyte, guardian, etc," and added : " The purchaser, being the beneficiary under the decree, paid in cash only the sum of $63.86 to cover costs, and has filed tax-receipts to the amount of $2,347.82, taxes accrued on the property." These taxes and the cash paid being deducted from the bid, left only the sum of $1,138.10 to be credited on the decree. The report was confirmed, and the title to the property vested in " J. W. Hoyte, guardian, and his heirs forever," and a deed was made to him in the same language, the words "J. W. Hoyte, guardian," being six times repeated in the deed. On January 3, 1877, Hoyte sold the lot to the complainant for $6,000, of which $2,000 were paid in cash, and the purchaser was to pay the residue as soon as the deed was made. The contract was in the form of a written agreement, signed by Hoyte. On March 26, 1877, this bill was filed, in which the complainant expresses his willingness to comply with his part of the contract if a good title can be made, but insists that the defendant Hoyte cannot make such a title. Hoyte, in his answer, admits that it was a part of the bargain that he should convey an indefeasible title, and contends that he

can make such title. One of Gleaves's daughters, who has come of age and is married, claims that the purchase was made by Hoyte as guardian, but is willing that the sale to complainant be confirmed, the purchase-money to be paid into court for the benefit of the wards after all due allowances to the guardian. The other children of Gleaves, being infants, answer by their guardian *ad litem*.

The sale having been made by the clerk of the Supreme Court, under a decree in a cause to which the wards of Hoyte were no parties, and expressly for the purpose of satisfying a debt due to the wards, and at his instance as their guardian, it is too clear for argument that Hoyte could not acquire a good title as against his wards. " No principle is better settled," as I have had occasion to say, " or founded upon a sounder basis of positive law or legal ethics, than that which declares that whoever undertakes to act for another, in any matter, shall not, in the same matter, act for himself, and this without respect to the fact whether the party has or has not made a profit by the act. Equity disallows the transaction upon general principles, without reference to advantage or unfairness." *Tynes* v. *Grimstead*, 1 Tenn. Ch. 508, and cases there cited. See also *Crowe* v. *Ballard*, 3 Bro. C. C. 120; *Brookman* v. *Rothschild*, 3 Sim. 153, 214. It is not like the case of a judicial sale of the ward's property, under proceedings to which he is a party, at which kind of sale it has been held, by some of our cases, that the guardian may purchase, and acquire a valid title, " if it be manifest that he has acted fairly, with the utmost good faith, and the transaction is free from any imputation of a design on his part to gain a benefit to himself, to the prejudice of the interests of his ward." *Blackemore* v. *Shelby*, 8 Humph. 440 ; *Elrod* v. *Lancaster*, 2 Head, 576. But this language fairly implies that the purchase is open to attack by the ward upon the ground of bad faith or profit on the part of the guardian. And it is at least doubtful whether equity would compel a purchaser

from the guardian to take such a title. *Collins* v. *Smith,.* 1 Head, 251. But the case before us is one where the consideration of the purchase consisted of the money of the ward, and falls directly within a uniform line of decisions. that such consideration raises a trust in favor of the beneficiary whose money is thus used. *Neal* v. *Cox*, Peck, 443 ;. *Roberts* v. *Jackson*, 3 Yerg. 77 ; *Turner* v. *Pettigrew*, 6 Humph. 438 ; *Moffitt* v. *McDonald*, 11 Humph. 457 ; *Wilkinson* v. *Wilkinson*, 1 Head, 305 ; *Gannaway* v. *Tarpley,.* 1 Coldw. 572 ; *Vancil* v. *Evans*, 4 Coldw. 346. And, as if to remove all doubt, the defendant expressly bids and takes a deed as guardian, thus fixing with notice of his. fiduciary title any person with whom he might trade. Whatever may have been the intention of the defendant, and conceding to him the utmost good faith, it is clear that the validity of his title depends entirely upon the election of his wards. The purchaser cannot be compelled to take such a title.

But the purchaser expresses his willingness to complete the bargain, if he can be assured of a good title, and such a title can, I think, be secured. The English courts, while expressly disavowing all jurisdiction to interfere with the inheritance of an infant, find no difficulty, when the infant is required to elect between realty and personalty, in electing for him, and divesting the title of realty out of him in a proper case. *Bingham* v. *Lord Clanmorris*, 2 Mol. 393 ;- *Taylor* v. *Phillips*, 2 Ves. 23 ; *Calvert* v. *Godfrey*, 6 Beav.. 97. That is the case before us. The wards have the option to take the bid at the sale, or the land, subject to an account with the guardian ; and if they take the land, they have the further election to treat it as personalty, the investment having been made without authority. *Roberts* v. *Jackson*, 3 Yerg. 77. And to this end they may elect to. ratify the sale made to the complainant, and take the purchase-money in lieu of the land. The married ward and her husband have made this election in their answer. The:

court may elect for the infants. But in order to act without danger to the wards, they; and the court for them, are entitled to have the exact figures before them. It will, therefore, be referred to the master to take and state an account with the guardian in both aspects: first, as the purchaser at the judicial sale for himself; and, secondly, as having purchased and resold for the wards. The first account will only require a calculation of interest on the amount of bid actually credited on the decree which belonged to the wards, with interest compounded annually to the date of the sale to the complainant. In the second account the guardian will be charged with the $6,000 as of the date of the resale, with rents received between the sale and that date, and credited with the costs and taxes paid at the sale, and with subsequent taxes paid, actual insurance, and repairs, with interest from the dates of payment to the date of resale. The master will also take proof, and report whether the sale to the complainant was for a full and fair price, and whether it is for the interest of the infants to confirm it. And until the coming-in of the report, all other matters, including the disposition of the costs of the cause, will be reserved.